UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

CIVIL ACTION NO. 2:22-CV-00130-DCR-EBA

GARY DYLAN COMBS,     PLAINTIFF,

V.     **ORDER AND RECOMMENDATION**

BRIDGESTONE AMERICAS, INC., *et al.*,     DEFENDANTS.

*** *** *** ***

### INTRODUCTION

This matter is before the Court on Defendant Bob Sumerel Tire Co., Inc.'s ("Sumerel") Motion to Compel Plaintiff Gary Dylan Combs to "answer outstanding discovery requests and deposition questions." [R. 88]. Additionally, Sumerel moves the Court to extend the scheduling order by 90 days. [R. 88]. Combs responded in opposition. [R. 95]. Sumerel filed a reply. [R. 98]. This matter is ripe for review. For the reasons that follow, the undersigned will grant in part and deny in part Sumerel's Motion to Compel, and recommend denying Sumerel's motion to extend the scheduling order.

### FACTS AND PROCEDURAL HISTORY

Combs brought this suit against Sumerel and Defendants Bridgestone Americas, Inc., Bridgestone Americas Tire Operations, LLC, Bridgestone Bandag, LLC, and Bob Sumerel Tire Co., Inc., for injuries Combs allegedly sustained when a tire that he was servicing exploded, causing him to be thrown into a metal rack. [R. 95 at pg. 1]. Combs alleges that he suffered a severe head injury and that, in the wake of the incident, he has suffered a variety of problems due to post-concussive syndrome, including impairment in memory formation and attention, hearing

loss, and severe orthopedic injuries. [R. 95 at pgs. 1–2]. Combs asserts he has received treatment by over 20 separate healthcare entities in Kentucky and Ohio through worker's compensation, and treatment from a healthcare entity in Texas (Advanced Medical Group entities). [R. 95 at pg. 2]. Combs also asserts that he has an agreement with a third-party litigation funding company, TLFNJ, to assist with the costs of litigation this action. [R 95 at pg. 4].

On July 1, 2022, Sumerel served Combs its First Set of Interrogatories and Requests for Production. [R. 88 at pg. 7]. Combs responded on August 1, 2022, and subsequently "supplemented those responses multiple times." [*Id*]. On March 17, 2023, Sumerel served Combs with a Second Set of Requests for Production. [R. 50]. On the same day, Sumerel moved for leave to serve additional interrogatories asserting that Combs' treatment had drastically changed, and new discovery requests were necessary to discern the reason. [R. 51]. The Court granted Sumerel's motion. [R. 61]. Combs responded to Sumerel's "Second Set of Requests for Production" on April 17, 2023, but did not respond to Sumerel's Second Request for Interrogatories. [R. 88 at pg. 7].

Finding Combs' responses lacking, Sumerel sent a letter to Combs on June 14, 2023, requesting that he "provide complete responses to the outstanding discovery requests and unanswered deposition questions." [R. 88-9]. Combs responded on July 5, 2023, [R. 88-6], and provided his most recent supplemental responses on September 20, 2023 [R. 95-7]. In his September 20, 2023 response, Combs provided supplemental responses for Sumerel's First Set of Interrogatories, and First and Second Set of Requests for Production. [R. 97-5]. Combs did not respond to Sumerel's Second Set of Interrogatories because they "were never served upon [Combs] per the Federal Rules of Civil Procedure." [R. 95 at pg. 19].

On August 25, 2023, Rumpke Consolidated Companies (Rumpke) filed an Intervenor Complaint asserting it is subrogated to the rights of Combs to the extent of any medical expenses

or income benefits paid. [R. 72]. On November 10, 2023, Rumpke, Combs, and the Bridgestone Defendants filed a proposed agreed order of dismissal, which the Court granted. [R. 101]. All claims asserted by Combs and Rumpke against Sumerel remain pending. [R. 101].

Now, Sumerel moves to compel Combs to respond and supplement interrogatories, requests for production, and deposition questions that, per Sumerel, were not fully and appropriately addressed. [R. 88]. Sumerel asserts that Combs did not sufficiently respond to First Set of Interrogatories numbered 10, 24, and 36; First Set of Requests for Production numbers 5, 15, 32, 35, and 36; Second Set of Interrogatories 1 and 2; and Second Request for Production of Documents numbers 1, 3, 5, 10, and 11.[1] [R. 98]. Additionally, Sumerel asserts that Combs improperly denied to answer various deposition questions. [R. 88 at pg. 12].

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) provides that—unless otherwise limited—"[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." The Court will consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). Information within this scope of discovery need not be admissible in evidence to be discoverable. *Id.* Whether discovery is relevant is broadly construed to include "any matter that bears on, or that reasonably could lead to other matters that bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The moving

---

[1] Sumerel moved to compel an answer to Second Request for Production of Documents number 17 but withdrew this request in his reply brief. [R. 98 at pg. 17].

party bears the burden of proving the relevancy of the information sought. *Burton v. Zwicker & Assocs., PSC.,* 2021 U.S. Dist. LEXIS 195470, at *3 (E.D. Ky. Jan. 9, 2012).

The scope of discovery, however, is not without limitation and is "subject to the sound discretion of the trial court." *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981) (citing *H. K. Porter Co., Inc. v. Goodyear Tire and Rubber Co.*, 536 F.2d 1115 (6th Cir. 1976)). As such, "[a] ruling by the trial court limiting or denying discovery will not be cause for reversal unless an abuse of discretion is shown." *Id.*

When a party refuses to provide information requested by another party, which is thought by the requesting party to be within the scope of Rule 26(b), then the requesting party may move the court to compel disclosure of the requested information. FED. R. CIV. P. 37(a)(3)(B). Motions to compel may be filed where a party has failed to (1) provide a mandatory disclosure; (2) answer or admit an interrogatory or request for admission; or (3) produce discoverable information, materials, or documents. FED. R. CIV. P. 37. However, prior to moving to compel, a party must in good faith confer or attempt to confer with the opposing party "failing to make disclosure or discovery in an effort to obtain it without court action." FED. R. CIV. P. 37(a)(1).

## ANALYSIS

Overall, Sumerel expresses doubt that Combs has provided all relevant information about the relationship between Advanced Medical Group and Plaintiffs' Counsel, and the role of the TLFNJ in this action. [R. 98 at pg. 4].

### A. Responses to Interrogatories

**I. First Request for Interrogatories No. 10:** Describe the amount of money expended by you or on your behalf, or presently owing by you or on your behalf, for any expense claimed by you to have been incurred as a result of the incident including, for example, the amount of each such expense and the name and present address and telephone number of each and every person, firm or corporation to whom each such expense was paid or is presently owing.

[R. 88 at pg. 8].

Combs provided a detailed response listing every amount incurred from Combs' treating physicians. [R. 95 at pg. 8]. In his September 20, 2023 response, Combs stated, "[p]laintiff is not seeking a claim for past medical expenses." [R. 95-7 at pg. 27]. Sumerel claims Combs' answer to Interrogatory No. 10 is inconsistent with answers provided elsewhere. [R. 98 at pg. 6].

First, Combs' Third Supplemental Disclosures state that medical providers will testify regarding Combs' medical care and expenses, necessity of treatment, and authenticate the charges. [R. 95-7 at pg. 38]. However, Combs states, in response to this interrogatory, he is not seeking a claim for past medical expenses. [R. 95 at pg. 8]. Secondly, here, Combs lists the total bill amount as $166,702.40, however the sum of the amounts provided in the chart totals $133,982.04. [R. 98 at pg. 7; R. 95 at pg. 9]. Lastly, there are discrepancies between the medical providers listed in Combs' Third Supplemental Initial Disclosures and his answers to this interrogatory. Combs lists Cardiovascular Clinic of Texas as a medical provider in his response here but not in its Third Supplemental Disclosures. [R. 95-7 at pgs. 35–40]. Combs lists St. Elizabeth Physicians Edgewood as a medical provider in his response here and in his Third Supplemental Disclosures, but St. Elizabeth Edgewood does not have medical records for Combs. [R. 95-7; R. 98 at pgs. 6–7]. Combs does not list Dr. Aaron Filler in his response to this request, but does list him in his third Supplemental Disclosures. [R. 98 at pgs. 6–7].

Here, Sumerel requests that Combs clarify: (1) whether Combs' medical providers are testifying related to his past medical expenses; (2) whether Cardiovascular Clinic of Texas, St. Elizabeth Edgewood, Dr. Aaron Filler, are medical treatment providers or experts, and (3) whether Combs has incurred $166,702.40 or $133,982.04 in medical expenses. [R. 98 pgs. 6–7]. Because

Combs' response to Interrogatory No. 10 is inconsistent with his supplemental disclosures, Combs shall clarify his response to Interrogatory No. 10 with the above information.

**II. First Request for Interrogatories No. 24:** If any of the expenses you incurred as a result of the incident were paid by a third party with subrogation rights or rights to recoupment, state the amount of each such benefit, the name and present address of each and every person, firm, and/or corporation from whom each such benefit was or will be received, and the costs, premiums or charges you incurred for each such benefit.

**III. First Request for Interrogatories No. 36:** Please identify any third-party payors that have paid medical or other benefits to or on behalf of the Plaintiff and state whether you have notified them or the present cause of action. If so, please indicate the date of such notification and their response, if any.
[R. 88 at pg. 8].

In Combs' September 20, 2023 response to numbers 24 and 36, he asserts that some of his medical expenses have been paid by worker's compensation, but he is unaware of the specific amounts, and that he has provided an authorization for Sumerel to obtain his worker's compensation records. [R. 95-7 at pg. 30]. Besides worker's compensation, per Combs, there are no subrogation rights or rights to recoupment relating to any of the care provided by Combs' physicians, nor have any third-party benefits been paid to Combs. [R. 95 at pgs. 9–10].

Rumpke's Intervenor Complaint asserts it is subrogated to the rights of Combs to the extent of any medical expenses and income benefits paid, and now, has dismissed its claims against the Bridgestone defendants. [R. 71, 72]. Sumerel is unsatisfied with Combs' answers to Interrogatories No. 24 and 36 and requests the Court order Combs to supplement his response "[i]n light of the settlement of the Rumpke workers' compensation lien and related claim by [Combs]." [R. 98 at pg. 8].

To the extent that the answer to this interrogatory has changed in light of the recent settlement between Rumpke and the Bridgestone defendants, Combs should supplement his

answer. Otherwise, Combs' answer is not incomplete, and he need not further respond to that interrogatory.

### B.  Dispute over Service of Second Request for Interrogatories

Combs argues that he has no obligation to respond to Sumerel's Second Request for Interrogatories because they were never served upon him pursuant to the Federal Rules of Civil Procedure. [R. 95 at pg. 19]. According to Combs, Sumerel quoted its interrogatories in a letter, but never served the request. [*Id*]. In response, Sumerel argues that, at a minimum, the Second Request for Interrogatories were attached to Sumerel's motion for leave to serve them, to which Combs responded and agreed to, and were served upon Combs alongside his motion for leave. [R. 8 at pg. 10].

Federal Rule of Civil Procedure 33 requires a party to *serve* on another party written interrogatories. On March 17, 2023, Sumerel filed his motion for leave to serve additional interrogatories, which the Court later granted. [R. 51, 61]. The Second Set of Interrogatories were attached to Sumerel's motion for leave, [R. 51], and served upon Combs on March 17, 2023. [R. *See Certificate of Service* 51-6]. Because the Second Set of Interrogatories were properly served, Combs must respond to Second Set of Interrogatories numbered 1 and 2, of which Sumerel moves to compel a response. [R. 88 at pgs. 8-9].

### C.  Requests for Production

Sumerel alleges that Combs' responses to Sumerel's first and second requests for production of documents are insufficient, and that Combs wrongly objected to Second Requests for Production numbered 5 and 11. [*Id*].

**I. First Request for Production No. 5:** Produce all invoices, bills, statements, canceled checks, or any other documentation substantiating the injuries, damages and/or expenses you are claiming to have been proximately caused by the incident.

[R. 88 at pg. 8].

Combs responded directing Sumerel to "see production in this matter along with Plaintiff's Expert reports." [R. 95-7 at pg. 13]. Combs asserts that records for plaintiff's treating physicians have already been produced, and each of Plaintiff's experts has produced a report. [R. 95 at pg. 10]. In response, Sumerel states that Combs has yet to produce medical and billing records from (1) Premier Counseling and Coaching Services, (2) Dr. Stephen W. Hamli, (3) Cardiovascular Clinic of Texas, and (4) St. Elizabeth Physicians Edgewood. [R. 98 at pg. 8].

Much like First Set of Interrogatories Number 10, there are discrepancies in Combs' responses as to whether Cardiovascular Clinic of Texas and St. Elizabeth Edgewood are medical providers or expert witnesses. If the entities provided medical treatment for Combs pursuant to his injuries here, Combs should provide relevant records. Similarly, if Dr. Stephen W. Hamli and Premier Counseling and Coaching Services provided medical treatment for Combs, documents should be produced.

**II. First Request for Production No. 15:** Produce all documents related to any expenses you incurred as a result of the incident which were paid by a third party with subrogation rights or rights to recoupment.
**III. First Request for Production No. 35:** Please produce complete copies of any documentation showing the payment by any collateral source of any portion of any claimed special damages, specifically including wage loss, medical bills, and physician bills in this matter.
**IV. First Request for Production No. 36:** Please produce all checks, receipts, etc., showing payment of any medical bill incurred by Plaintiff regarding matters set forth in this Complaint.
[R. 88 at pg. 8].

According to Combs, other than the amounts covered by workers' compensation, there are no subrogation rights or rights to recoupment relating to the care provided by Combs' treating medical providers, nor have there been payments by any collateral source. [R. 95-7 at pgs. 15, 21]. Sumerel moves to compel Combs to supplement his response "in light of the settlement of Rumpke workers' compensation lien and related claim by Plaintiff." [R. 98 at pgs. 8–9]. To the extent that

the answer to these interrogatories have changed considering the recent settlement between Rumpke and the Bridgestone defendants, Combs should supplement his answer. Otherwise, Combs' answer is complete, and he need not further respond to this request for production.

**V. First Request for Production No. 32:** Produce any documents related to any agreement you have entered into with any caregiver concerning repayment of medical charges or granting liens. [R. 88 at pg. 8].

Combs asserts that there are no agreements between him and any medical provider concerning the repayment of medical charges or granting of liens. [R. 95 at pg. 11]. In his September 20, 2023 response, Combs states, "[n]one in Plaintiff's possession." [R. 95-7 at pg. 21]. Sumerel, unsatisfied with this response, requests any documents relating to agreements between the medical providers, Plaintiff's Counsel, and/or the litigation funding company. [R. 98 at pg. 9]. Sumerel alleges there are nearly $55,000 in medical expenses that have "remained unpaid for a year, but no records have been produced about them or their nonpayment." [*Id*]. Because of this, Sumerel requests that the Court compel Combs to produce any "letter[s] of protection or similar documents issued to the Texas medical providers on Plaintiff's behalf." [*Id.*]. Here, Combs asserts there are no agreements between him and any medical provider, therefore, Combs has responded in full.

**VI. Second Request for Production No. 1:** All medical records, reports, narratives, office notes, emails, communications, faxes, chat logs, database materials, digitally-saved voicemails, voicemail transcriptions, referral forms, intake forms, correspondence or other written records of any nature whatsoever sent from or sent to any physician, chiropractor, radiologist, or physical therapist who has treated you with regard to the bodily injuries which you have asserted in connection with this case, or sent by or to any member of their staff(s).

[R. 88 at pgs. 9–10].

Combs asserts that he has produced all records and communications with Plaintiff's treating healthcare providers. [R. 95 at pg. 12]. Sumerel states, "[i]n this case, it appears that there

are letters of protection or similar agreements and/or documents in which certain of his treating physicians have deferred payment of [Combs'] medical bills," and claims that Combs has refused to provide the documents. [R. 98 at pg. 14]. Sumerel asserts that there must be an agreement between the Advanced Medical Group entities and TLFNJ, or plaintiffs' counsel and/or Combs, because there are outstanding medical bills and medical bills that have not been submitted to workers' compensation nor private insurance. [R. 98 at pg. 12].

Combs asserts that there are no agreements between Advanced Medical Group and plaintiffs' counsel, nor between Advanced Medical Group and Combs. [R. 95 at pg. 4]. However, Sumerel argues that Combs' production here falls short because Combs does not mention the involvement of TLFNJ in any agreements to pay the medical entities in the future. [R. 98 at pg. 12]. Combs asserts that he has provided all documents at issue here. Therefore, Combs has responded in full and will not be compelled to supplement his answer.

**VII. Second Request for Production No. 3:** Please produce all medical and hospital expenses or bills and all drug bills incurred by you in connection with the injuries that you alleged arose out of the occurrence giving rise to this case.
[R. 88 at pg. 10].

Combs asserts that he has already produced all documents at issue here, including all billing records from Combs' treating healthcare providers. [R. 95 at pg. 12]. Sumerel states that Combs has yet to produce the medical and billings records from Premier Counseling and Coaching Services, Dr. Stephen W. Hamil, Cardiovascular Clinic of Texas, and St. Elizabeth Physicians Edgewood. [R. 98 at pg. 15]. As discussed above in reference to these medical facilities, all medical and billing records should be produced if the facility provided medical treatment for Mr. Combs in relation to his injuries at issue in this case.

**VIII. Second Request for Production No. 5:** Please produce all correspondence, emails, faxes, text messages, letters, memoranda, "case status updates," medical records, photographs, or other

evidence or documents provided to or received by you, your agents, or by your attorneys or by any other member of your legal team (by any means whatsoever, including via third-party portal services) to:

(b) Any physician, osteopath, chiropractor, radiologist, physical therapist, or practitioner of any healing art:

>   (1) Who has treated you for injuries sustained in this occurrence;

>   (2) Who has treated you for injuries sustained since this occurrence; and

>   (3) Who has treated you for previous injuries to those portions of your body which you claim to have injured in this occurrence;

(c) Any case manager, scheduler, physician liaison, paralegal, care coordinator, secretary, scheduling assistant, or any other staffer employed by any physician or other third party;

(e) Any litigation funding company or similar third-party funding source:

(f) This request includes all correspondence between you, your attorneys, their staffers, or any of your other representatives with any third-party funding corporation, including complete copies of any letters, statements, or records you or your agents may have provided to same.

**X. Second Request for Production No. 11:** With respect to any financing or funding companies that have provided loans or funds for any reason related to your alleged personal injuries or this lawsuit please produce the following documents:
(a) Your application for benefits, loans, or other payments made by such funding or financing companies;
(b) All documentation regarding your case or case status provided by you or any member of your legal team to such funding or financing companies;
(c) All documentation regarding any payments that such funding or financing company has made on behalf of you;
(d) Copies of any and all agreements between with such funding or financing companies and you and/or your medical providers;
(e) Copies of any and all correspondence between your attorneys and any funding or financing companies regarding you;
(f) Copies of any and all agreements between your attorneys and such funding or financing companies as such agreements pertain to you.

Combs objects to Second Request for Production Numbers 5 and 11. Pursuant to Number 5, Combs argues that all documents pursuant to subsections (b) and (c) have been provided, and documents pursuant to (e) and (f) are irrelevant. [R. 95 at pg. 14]. Because the documents related to (b) and (c) are not before the Court, the Court cannot justly adjudicate whether the production

Page 11 of 17

was insufficient. Accordingly, the Court will not order Combs to further respond to subsections (b) and (c).

In response to Second Request for Production Number 5 (e) and (f), and 11, Combs asserts that documents involving third-party litigation funding are irrelevant to this action, and therefore, not discoverable. [R. 95 at pg. 14]. In his response to Sumerel's Motion to Compel, Combs revealed that he has an agreement with a third-party litigation funding company, TLFNJ, to "defray expenses in pursuing the lawsuit." [R. 95 at pg. 4]. Combs also revealed that TLFNJ pays Combs $1,000 per month and paid for the "specialized Diffusion Tensor Imaging performed by Plaintiff's retained expert Dr. Filler," but according to Combs, TLFNJ has "no involvement or influence whatsoever with the handling of the claim or the litigation," and has not paid for care by any treating healthcare provider. [R. 95 at pg. 4].

Sumerel argues that the information about any agreements between TLFNJ, Combs, Plaintiffs' Counsel, or the medical providers is relevant to this action because Combs is using the third-party litigation company to "bolster his claims against Sumerel." [R. 98 at pg. 4]. According to Sumerel, the $1,000 monthly payment made to Combs from TLFNJ is not paying litigation costs, but rather is paying Combs' living expenses "in an attempt to inflate his wage loss claim and bolster his medical expert's opinion that Plaintiff is unable to work." [R. 98 at pg. 4]. As stated above, whether discovery is relevant is broadly construed and includes any matter that bears on, or that reasonably could lead to other matters that bear on, any issue that is or may be in the case. Here, the funding of Combs' living expenses is relevant, at least in part, to the issues in this case. If the monthly payments from TLFNJ to Combs are paying his living expenses, like rent, groceries, etc., these costs relate to damages that Combs may claim in this action. Because of this, the $1,000

monthly payments and relationship between TLFNJ and Combs could reasonably bear on the amount of damages at issue.

Combs additionally argues that even if information pertaining to TLFNJ is relevant, any communication between Plaintiffs' Counsel and TLFNJ is privileged under the work product doctrine. [R. 95 at pg. 15]. However, Court does not agree that agreements between a third-party litigation funding company and plaintiffs' counsel are privileged work product. The work product doctrine protects material that was created in anticipation for litigation or trial. Here, agreements between counsel and TLFNJ, or evidence of payments of medical expenses or wage loss expenses are not material created in anticipation for trial. Therefore, information pertaining to TLFNJ is relevant and not privileged, and therefore it is discoverable.

Additionally, Sumerel argues that any agreements between TLFNJ and the medical providers, especially medical providers that will testify at trial, are relevant to this action because the agreements will uncover that the providers have an interest in the outcome. [R. 98 at pg. 14]. According to Sumerel, any agreements disclosing that medical providers will be paid later by TLFNJ are relevant to the providers' bias and credibility. [*Id*.]. Although parties may later argue about the admissibility of this evidence, any agreements between TLFNJ and the medical providers (if any) are relevant to this action and discoverable, because it is relevant to bias.

**IX. Second Request for Production No. 10:** All hospital or medical provider liens; all Letters of Protection, all assignments, of interests to any medical provider, all subrogation agreements of every type (including, but not limited to, worker's compensation benefits, lost earning benefits, ERISA benefits, etc.); assignments to insurers, providers of medical services, funding companies; correspondence and notices from providers of medical coverage, pension funds, and health care providers claiming subrogation rights; assignments to and agreements with medical care providers; notices of claims of subrogation of every type by government entities, medical care providers, pension fund providers, etc.; and all settlement documents, agreements, releases, covenants not to sue, etc., executed by you in connection with any of the injuries for which you seek recovery in this lawsuit.

In response, Combs asserts "there are no such documents other than documents relating to workers' compensation, and [Combs] provided an authorization for workers' compensation records." [R. 95 at pg. 17]. According to Combs, TLFNJ Funding has not paid for care by any treating healthcare provider or paid any amount in satisfaction of damages. [*Id*]. As discussed above, any agreements between TLFNJ and Combs, Plaintiffs' counsel, and the medical providers are relevant to this action, and therefore, Combs must produce.

### D. Deposition

Sumerel asserts that Combs objected to questions "regarding the $1,000 monthly payment, the referrals of Plaintiff to the Texas medical providers, and [] related billing issues," during his deposition. [R. 98 at pgs. 12, 17–18]. Sumerel argues that this information is relevant to the action at hand and is not protected by the attorney client privilege. [*Id*]. Combs argues that discovery requests or deposition questions on litigation funding are irrelevant. [R. 95 at pg. 16]. As discussed above, the $1,000 payments and any litigation funding agreement between Combs and/or Combs' counsel and TLFNJ are relevant to this action. Additionally, Combs does not address how the deposition questions about the Texas medical providers or agreements with those providers are privileged. [R. 87-1, at pgs. 120, 127, 129, and 130]. Finding that information relevant, and without Combs arguing otherwise regarding the Texas medical providers, Combs must supplement his answers to the questions asked but unanswered during his deposition about the Texas medical providers, related billing issues, and the $1,000 monthly payments.

### E. Extending the Scheduling Order

Sumerel additionally moves to extend the scheduling order in this case 90 days. In support, Sumerel asserts that numerous fact and expert witness deposition need to be taken, many of Combs' medical providers have not responded to Sumerel's subpoenas, Sumerel needs to conduct

discovery of the status of the workers' compensation proceeding with Rumpke, and numerous witnesses that still need to be deposed. [R. 88 at pgs. 23-24]. Combs is not opposed to this extension. [R. 95 at pg. 19]. However, any motion for extension of pending deadlines has been reserved for ruling by the presiding district judge. [R. 99]. The deadlines for discovery in this action have now expired.

Sumerel argues that around September 30, 2022, more than one year ago, he issued subpoenas with depositions upon written questions to medical providers in Texas and Louisiana that Combs included in his Initial Disclosures pursuant to Fed. R. Civ. P. 26(a)(1)(A). According to Sumerel, none of the providers have responded to the subpoenas, produced documents, or answered written questions. [R. 88 at pg. 14]. Sumerel requests additional time so that the Texas and Louisiana medical providers can respond to the subpoenas served on them months ago and the "associated Motions to Compel in the Texas Court" may be resolved. [R. 98 at pg. 18]. However, Sumerel makes no statement of when the actions to enforce the subpoenas were filed, or how long they have remained pending. Although the motion to compel was timely filed, the Court, considering the ample time allowed for discovery, the lengthy history and development of this case and the impending deadlines, recommends that Sumerel's motion to extend the scheduling order in this case by 90 days be denied

## CONCLUSION

The Court, having considered the issues and being otherwise sufficiently advised,

**IT IS ORDERED** that Defendant Bob Sumerel Tire Co.'s motion to compel [R. 88] is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Sumerel's motion to compel the Plaintiff, Gary Dylan Combs, to supplement his response to First Request for Interrogatory No. 10, and Second Request for Interrogatories Nos. 1 and 2 is GRANTED. On or before December 4, 2023, Combs shall supplement his responses.

2. Sumerel's motion to compel Combs to supplement his responses to First Request for Interrogatories Nos. 24 and 36, and First Request for Production Nos. 15, 35, 36 are GRANTED to the extent his answers have changed in light of the settlement between Rumpke and the Bridgestone defendants. On or before December 4, 2023, Combs shall supplement his responses.
3. Sumerel's motion to compel Combs to supplement his responses to First Request for Production Nos. 32, and, and Second Request for Production No. 1 and 5(b) and (c) is DENIED.
4. Sumerel's motion to compel Combs to supplement his responses to First Request for Production No. 5, and Second Request for Production Nos. 3, 5(e) and (f), 10, and 11 is GRANTED. On or before December 4, 2023, Combs shall supplement his responses.
5. Sumerel's motion to compel Combs to answer deposition questions cited in Sumerel's motion [R. 88 at pg. 12] is GRANTED. On or before December 4, 2023, Combs shall supplement his responses, treating the questions and the obligation to respond according to Fed.R.Civ.P. 31, which applies to depositions by written questions.

AND

**IT IS RECOMMENDED that** Sumerel's motion to Extend the Scheduling Order be DENIED.

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Recommended Disposition. Particularized objections to this Recommendation must be filed within fourteen days from the date of service thereof or further appeal is waived. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Thomas v. Ann*, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(1).

Signed November 27, 2023.



Signed By:
*Edward B. Atkins*  *EBA*
United States Magistrate Judge